Dr. Tara Gustilo, M.D.,                                           22-CV-00352 (SRN-DJF)

                    Plaintiff,

                                                          **DEFENDANT'S MEMORANDUM**
v.                                                        **OF LAW IN SUPPORT OF MOTION**
                                                          **FOR A PROTECTIVE ORDER**
Hennepin Healthcare System, Inc.                          **AND/OR TO LIMIT DISCOVERY**

                    Defendant.

## INTRODUCTION

Defendant Hennepin Healthcare System, Inc. ("HHS") brings this motion for a protective order pursuant to Rules 26(b)(2)(C) and 26(c) of the Federal Rules of Civil Procedure because the topics contained within the Rule 30(b)(6) deposition notices served by Plaintiff Tara Gustilo, M.D. (1) are overly broad and improperly fail to describe with reasonable particularity the matters for examination; (2) inappropriately seek legal conclusions and information protected by the attorney-client and/or attorney work product privileges; (3) improperly seek "discovery on discovery;" and/or (4) are inappropriate for a 30(b)(6) deposition because each and every one of these topics could have (and should have) been explored during the depositions of fact witnesses or via other discovery methods.

## FACTUAL BACKGROUND

This lawsuit arises out of HHS's decision to remove Plaintiff from her position as chair of the HHS OB/GYN department. (*See generally* ECF Doc. #1). Pursuant to the HHS Medical Staff Bylaws, the involuntary removal of a department chair is heard by the MEC,

which in turn makes a recommendation to the HHS Board of Directors. (Ex. 1).[1] The MEC is comprised of 27 HHS medical providers, and a two-thirds vote of these members is required to involuntarily remove a department chair. (*Id.*)

On April 13, 2021, the MEC voted to recommend removal of Plaintiff as chair of the OB/GYN department because she had lost the confidence and trust of her direct reports, had fostered a poor working environment, and failed to accept responsibility "but rather blamed staff without apology." (Ex. 2 at 2126). The MEC vote was 25-1, with 25 members voting in favor of removal. (Ex. 3 at 1866). Plaintiff cast the single vote against her own removal and one member abstained. (*Id.*) On April 28, 2021, the Board of Directors voted unanimously to approve the MEC recommendation. (Ex. 4 at 25).

There is no dispute regarding the key fact witnesses in this case. These witnesses include 27 MEC members; 13 members of the HHS Board of Directors; Chief Medical Officer, Dr. Hoody; then-Vice President of Medical Affairs, Dr. Hilden; Human Resources Manager, Jennifer Hauff; members of the OB/GYN department; and representatives of Human Systems Dynamic Institute (HSDI), which is an outside consulting firm that HHS retained – with Plaintiff's support – in an effort to resolve the issues in Plaintiff's department and keep her employed as chair of that department. (*See, e.g.*, ECF Doc. #1 at ¶¶ 32, 36-41, 49, 53-54, 57-58, 63, 66; Ex. 5).

Before bringing this lawsuit, Plaintiff knew who these fact witnesses were because she worked with and was present for several meetings with them. Plaintiff surreptitiously

---

[1] All exhibits referenced herein are attached to the Declaration of Katlyn J. Lynch filed on April 3, 2023, and are referred to as "Ex." All pleadings filed in this case and referenced herein are referred to as "ECF Doc. #."

recorded six of those meetings, and the recordings have been produced in discovery. Plaintiff was also present for the April 13, 2021, meeting in which the MEC voted to recommend her removal as chair of the OB/GYN department. (Ex. 3 at 1865). Plaintiff also attended an interview in late 2020 with HSDI, and a transcript and recording of that interview, along with scores of emails pertaining to HSDI's climate study, have been produced in discovery.

Plaintiff initiated this lawsuit more than a year ago on February 6, 2022, alleging race discrimination and retaliation and First Amendment retaliation. (ECF Doc. #1). At the outset, Plaintiff intentionally limited herself to ten fact depositions, despite knowing there were more than ten fact witnesses. (ECF Doc. #14 at 3). Indeed, Plaintiff's May 27, 2022, initial disclosures identify more than ten witnesses having "direct knowledge" of Plaintiff's demotion, including members of the OB/GYN department, MEC members, and HHS Board members. (Ex. 6 at 1-2). HHS identified the same witnesses in its May 27, 2022, initial disclosures. (Ex. 7 at 1-4).

The parties are now more than ten months into discovery and HHS has produced thousands of documents and emails that describe the bases for Plaintiff's demotion – the subject of this lawsuit. In addition, Plaintiff has had ample opportunity to depose all of the key witnesses in this case. To date, Plaintiff has taken fourteen fact depositions, including:

1. **Dr. Hoody (11/7/22)**: Dr. Hoody was Plaintiff's direct supervisor and is HHS's Chief Medical Officer. Dr. Hoody was directly involved in the decision to remove Plaintiff from chair of the OB/GYN department and his emails and other documents regarding this matter have been produced in discovery. Dr. Hoody attended several meetings with Plaintiff to discuss concerns about her leadership (Plaintiff's surreptitious

3

recordings of six of these meetings have been produced in discovery). During the deposition, Plaintiff had ample opportunity to ask Dr. Hoody about his decision-making and the facts and circumstances leading to the demotion at issue.

2. **Dr. Nezworski (12/6/22)**: Dr. Nezworski was Plaintiff's former colleague and she replaced Plaintiff as chair of the OB/GYN department. Dr. Nezworski has direct knowledge of the concerns the department had with Plaintiff's leadership and Plaintiff had ample opportunity to ask Dr. Nezworski questions related to these topics during her deposition.

3. **Jennifer Hauff (11/16/22)**: Ms. Hauff was the Human Resources Manager who was directly involved in the process that led to Plaintiff's demotion. Ms. Hauff's emails, notes, and other documents regarding this matter have been produced in discovery. Ms. Hauff also attended several meetings with Plaintiff to discuss concerns about Plaintiff's leadership, including a meeting that took place in 2017 in response to complaints about Plaintiff's leadership. Plaintiff surreptitiously recorded six of those meetings and the recordings have been produced in discovery. During the deposition, Plaintiff had ample opportunity to ask Ms. Hauff questions about these topics.

4. **Dr. Hilden (1/3/23)**: Dr. Hilden, the then-Vice President of Medical Affairs, was a voting MEC member and he was directly involved in the decision to remove Plaintiff from chair of the OB/GYN department. Dr. Hilden received several complaints regarding Plaintiff's leadership from members of the OB/GYN Department and others and he attended several meetings with Plaintiff to discuss these complaints and concerns. The complaints and the content of related meetings are summarized in

4

notes, emails, and other documents produced in discovery. Plaintiff had ample opportunity to ask Dr. Hilden questions regarding his decision-making and the facts and circumstances leading to her demotion during the deposition.

5. **Ten MEC members (3/23)**: Nine months into discovery, Plaintiff sought and received permission from the Court to increase the deposition limit so that Plaintiff could take the depositions of as many MEC members as was practicable until the close of discovery on March 16, 2023 (the discovery deadline had already been extended by three months with a caution from the Court that additional extensions were unlikely absent "exceptional circumstances"). (ECF Doc. #27). The parties, working in good faith, were able to schedule and conduct the depositions of ten MEC members in less than two weeks. The MEC members testified regarding the reason(s) they voted to recommend removing Plaintiff from chair of the OB/GYN Department.

**PLAINTIFF'S RULE 30(b)(6) DEPOSITION NOTICES**

Plaintiff seeks to take a Rule 30(b)(6) deposition, but (again) she has not acted in a timely or diligent fashion. The applicable timeline as it relates to Plaintiff's Rule 30(b)(6) deposition notices follows.

***Plaintiff's October 3, 2022 Rule 30(b)(6) Deposition Notice***

Plaintiff served a Rule 30(b)(6) deposition notice on October 3, 2022, noticing therein 36 separate topics (with subparts contained within four of the topics). (Ex. 8). On October 11 and 12, 2022, the parties agreed to "continue[]" the Rule 30(b)(6) deposition that Plaintiff had unilaterally scheduled for October 18 so that they could meet and confer regarding the scope of topics that are appropriate for a 30(b)(6) deposition. (Ex. 9).

During a meet and confer held on October 13, 2022, HHS informed Plaintiff that several of the topics listed in Plaintiff's Rule 30(b)(6) notice were inappropriate for a 30(b)(6) deposition because they sought information regarding fact (not "corporate") issues, and that these topics were more appropriately suited for fact depositions, interrogatories, and/or document requests. As discussed above, all relevant fact witnesses were known to Plaintiff because she either had personal knowledge of them or she should have known through her review of the documents that HHS produced in discovery. HHS also informed Plaintiff on October 13 that its Rule 30(b)(6) designees would be the same witnesses whom Plaintiff had already noticed for fact depositions and HHS proposed combining the witnesses' fact depositions with their 30(b)(6) depositions to promote efficiency. Plaintiff was not agreeable to that proposal.

### HHS's October 28, 2022 Response and Objections

On October 28, 2022, HHS served its response to Plaintiff's Rule 30(b)(6) notice. (Ex. 10). In its response, HHS reiterated that several of the topics were "not a proper use of, and [were] inconsistent with the purpose and practice of, a Rule 30(b)(6) deposition. Instead, the information sought by those topics should be obtained by an interrogatory, a document request, and/or through the depositions of fact witnesses." (*Id.*) HHS asserted several other objections, including that many of the topics were overly broad and lacked reasonable particularity because they sought testimony regarding "any and all" facts and circumstances. Without waiving its objections, and in an effort to compromise, HHS designated Dr. Hilden, Dr. Nezworski, and Jennifer Hauff to testify regarding 23 of the 36 topics listed in Plaintiff's Rule 30(b)(6) notice. (*Id.*) The parties exchanged additional written correspondence

6

regarding the scope of the Rule 30(b)(6) deposition on November 2, and 3, 2022. (Ex. 11). Plaintiff did not, however, provide a full response to each of HHS's objections.

On November 9, 2022, HHS informed Plaintiff again that the topics in her Rule 30(b)(6) notice were inappropriate for a 30(b)(6) deposition because they sought fact – not corporate – testimony, and she would have ample opportunity to take fact depositions of relevant fact witnesses. (Ex. 12). In another effort to compromise, HHS designated Jennifer Hauff to testify regarding Rule 30(b)(6) topic 15, bringing the total number of topics for which HHS had designated witnesses to 24. HHS also articulated its factual and legal justification for its objections to the remaining 12 topics.

### *Plaintiff had Ample Opportunity to Depose HHS's Designees on 30(b)(6) Topics*

Plaintiff deposed Ms. Hauff on November 16, 2022. The deposition lasted approximately three hours, leaving plenty of time to conduct both a fact and a Rule 30(b)(6) deposition. HHS had designated Ms. Hauff as a Rule 30(b)(6) witness on several 30(b)(6) topics. Plaintiff asked, or had ample opportunity to ask, Ms. Hauff questions regarding the Rule 30(b)(6) topics for which she had been designated. For example:

- o Ms. Hauff used the term "trigger" during one of the meetings that Plaintiff surreptitiously recorded, and this term is the subject of topic 21 in Plaintiff's Rule 30(b)(6) notice. HHS designated Ms. Hauff to testify regarding topic 21. But Plaintiff chose, for unknown reasons, not to ask Ms. Hauff about that topic despite having ample opportunity to do so. Ms. Hauff, of course, is the only person who has adequate foundation to testify regarding this topic because she is the one who used the word "trigger," but Plaintiff chose not to ask Ms. Hauff about it during her deposition.

Moreover, and to the extent this topic seeks testimony regarding the bases for Plaintiff's demotion, Plaintiff had ample opportunity to get that testimony through the key decision-makers who have already sat for fact depositions, including Ms. Hauff, Drs. Hoody and Hilden, and ten MEC members who voted to recommend Plaintiff's removal as chair of the OB/GYN department. Plaintiff also could have deposed other fact witnesses, including HHS Board members.

o HHS designated Ms. Hauff to testify regarding Rule 30(b)(6) topics 17 and 18, which seek testimony regarding HHS's "policy and position" regarding "political affiliation." Plaintiff asked questions related to this topic during Ms. Hauff's deposition, and Ms. Hauff testified that HHS does not have a policy regarding "political affiliation." (Ex. 22 at 41-42). To the extent Plaintiff had follow up or other questions related to this topic, those questions could have and should have been asked during Ms. Hauff's deposition. Plaintiff could have also asked questions regarding this topic during any of the other fact depositions. Plaintiff also had ample opportunity to ask – and did ask – about this topic through an interrogatory and a request for admission. HHS answered that it does not have a policy regarding political affiliation. (Ex. 23 at 3 & Ex. 24 at 2). Thus, any further discovery on this issue would be unreasonably cumulative and duplicative.

o Rule 30(b)(6) topic 15 seeks testimony regarding "[a]ny and all facts, circumstances, and documents concerning or related to" a "2017 Incident" involving complaints of Plaintiff's leadership. Despite this topic being overly broad because it seeks "any and all" testimony about the topic, Plaintiff nonetheless had ample opportunity to ask

questions regarding this topic during Ms. Hauff's deposition, and Ms. Hauff was the appropriate fact witness to testify regarding this topic because she was directly involved in investigating the 2017 incidents at issue. Indeed, Plaintiff asked Ms. Hauff several questions related to this topic during her deposition. (Ex. 22 at 14-22, 32; Ex. 2 attached to Ms. Hauff's November 16, 2022 deposition transcript). Plaintiff could have also taken the depositions of several other fact witnesses, including the members of the OB/GYN department who raised concerns regarding Plaintiff's leadership in the wake of the 2017 incidents at issue. And, during those depositions, Plaintiff could have asked these witnesses questions related to this topic.

o Rule 30(b)(6) topic 16 seeks testimony regarding HHS's "involvement with or knowledge of the 'White Coats for Black Lives' rally[.]" Plaintiff asked Ms. Hauff specifically about this topic during her deposition, and Ms. Hauff testified that staff were advised not to affiliate with external organizations in their professional capacities, they attended the White Coats for Black Lives event in their "personal capacities," and, to her knowledge, HHS did not "sponsor" that event. (Ex. 22 at 79-81, 89-90). To the extent Plaintiff had follow up or other questions related to this topic, those questions could have and should have been asked during Ms. Hauff's deposition or during any of the other fact depositions. Indeed, Plaintiff asked Dr. Hilden about it during his January 3 deposition, and he also testified that HHS "didn't sponsor that event." (Ex. 25 at 71).

o Rule 30(b)(6) topic 4 seeks testimony on "[a]ny and all facts, circumstances, and documents relating to, concerning, or surrounding [HHS's] diversity, equity, and

inclusion policies, initiatives and training." Despite this topic being overly broad because it seeks "any and all" testimony on the topic, HHS designated Ms. Hauff to testify regarding this topic. Plaintiff had ample opportunity to ask Ms. Hauff about this topic during her deposition, but, for unknown reasons, chose not to do so.

In an off-the-record discussion during Ms. Hauff's November 16 deposition, HHS again reiterated its proposal to combine the fact depositions with the 30(b)(6) depositions for efficiency purposes. Plaintiff declined and insisted that the witness must be called back for a second deposition to answer Rule 30(b)(6) questions.

On November 17, 2022, Plaintiff withdrew Rule 30(b)(6) topics 33, 34, and 35 in response to HHS's objections to those topics and she also agreed to HHS's proposed compromise on 30(b)(6) topics 13 and 28. (Ex. 13). However, Plaintiff indicated she would not compromise on the seven remaining Rule 30(b)(6) topics for which HHS had not designated a witness. Plaintiff claimed it was HHS's burden to seek a protective order on those seven topics, even though HHS had already advised Plaintiff that it was her deposition and, if she wanted to pursue those topics, she would need to bring a motion to compel. Plaintiff did not follow up to schedule Rule 30(b)(6) depositions and did not bring a motion to compel.

Plaintiff deposed Dr. Nezworski on December 6, 2022. The deposition lasted approximately two hours, leaving plenty of time to conduct both a fact deposition and a Rule 30(b)(6) deposition. HHS had designated Dr. Nezworski as a Rule 30(b)(6) witness to testify regarding topic 30 – the facts and circumstances leading to Dr. Nezworski's elevation to chair of the OB/GYN department. During the deposition, Plaintiff asked Dr. Nezworski questions

10

regarding this topic. (Ex. 26 at 59-62). Plaintiff also asked Dr. Hoody questions related to this topic during his deposition. (Ex. 27 at 120-121). In addition, and during a meeting that Plaintiff attended with Dr. Hoody, Plaintiff stated that Dr. Nezworski was a "good choice" to take over the chair position in the OB/GYN department. Plaintiff surreptitiously recorded that meeting, and the recording has been produced in discovery.

Plaintiff also had ample opportunity to ask Dr. Nezworski questions about the "culturally congruent care model" that is the subject of topic 5. As the interim chair of the OB/GYN department, Dr. Nezworski would be able to testify regarding patient care programs in the department. But again, Plaintiff did not ask Dr. Nezworski questions related to topic 5. Plaintiff did, however, testify extensively during her own deposition about the various congruent care programs that she spearheaded while she worked in the HHS OB/GYN department.

### *Plaintiff Fails to Pursue the Rule 30(b)(6) Issue*

On December 13, 2022, the parties stipulated to extend the discovery deadline by three months. The stipulation was driven in large part by the Rule 30(b)(6) deposition. The stipulation stated that the Rule 30(b)(6) deposition would require Plaintiff to re-depose several of HHS's witnesses, and the parties would "continue to attempt to resolve issues relating to [HHS's] 30(b)(6) deposition in order to ensure the depositions are taken efficiently." (Doc. #25 at 1). The extension request was made "to accommodate such depositions," but after the Court approved this extension HHS did not hear from Plaintiff on the 30(b)(6) issue for over two months. The parties also stipulated that they were meeting and conferring regarding the MEC depositions, and if those depositions were to occur the

11

parties would request an additional two-month extension. (*Id.* at 2). The Court, however, stated in its December 13, 2022 Order that additional extensions would not likely be granted absent "exceptional circumstances." (Doc. #27).

Plaintiff deposed Dr. Hilden on January 3, 2023. The deposition lasted approximately 4 hours, leaving plenty of time for Plaintiff to conduct both a fact and a Rule 30(b)(6) deposition. HHS had designated Dr. Hilden to testify regarding many of the Rule 30(b)(6) topics, including topics relating to the bases for which HHS removed Plaintiff as chair of the OB/GYN department. Plaintiff asked, or had ample opportunity to ask, Dr. Hilden questions about the Rule 30(b)(6) topics for which he had been designated.

Despite the Court's caution that additional discovery extensions beyond March 16, 2023, were unlikely, Plaintiff did not bring up any of the outstanding Rule 30(b)(6) issues with HHS leading up to or on the day of Dr. Hilden's deposition. Indeed, HHS did not hear from Plaintiff at all on this case again until January 24, 2023 – three weeks after Dr. Hilden's deposition. (Ex. 14). Plaintiff did not bring up the Rule 30(b)(6) deposition. For strategic reasons or otherwise, Plaintiff had shifted her focus to seeking an increase in the number of depositions she could take so that she could depose all of the MEC members. The parties had several discussions about the MEC depositions in late January and into February 2023, including email exchanges and a meet and confer on February 17, 2023. But once again, Plaintiff did not pursue a Rule 30(b)(6) deposition during any of those conversations. (*Id.*)

Plaintiff did not bring up the issue of a Rule 30(b)(6) deposition until February 28, 2023, during the IDR conference with the Court. To HHS's surprise, Plaintiff told the Court that she was waiting to hear back from HHS to schedule the Rule 30(b)(6) depositions. HHS

was surprised to hear this because Plaintiff had not pursued the issue in over two months, and the parties were less than three weeks away from the March 16, 2023, discovery deadline. In addition, Plaintiff had known since October 28, 2022, the identities of HHS's Rule 30(b)(6) designees and had ample opportunity to depose them during their fact depositions.

### Plaintiff's Attempt to Take a Rule 30(b)(6) Deposition is an End-Run to Remedy Her Failure to Conduct Discovery in a Timely Manner

Once it became clear that it was not practicable for Plaintiff to depose all 26 members of the MEC by the March 16 discovery deadline, Plaintiff suddenly became interested in a Rule 30(b)(6) deposition after paying it no attention for more than two months. HHS informed Plaintiff during meet and confers that it would be very difficult to schedule, prepare for, and defend several MEC depositions, and also schedule, prepare for, and defend multiple Rule 30(b)(6) depositions on such short notice. Even so, and in an effort to reach a resolution, HHS offered to again review the Rule 30(b)(6) topics to see if there was additional room for compromise.

On March 1, 2023, HHS reminded Plaintiff that on October 28, 2022, it had designated witnesses to testify regarding the majority of Plaintiff's Rule 30(b)(6) topics, that Plaintiff had already deposed those witnesses, and that Plaintiff had ample opportunity to ask them 30(b)(6) questions during the fact depositions. (Ex. 15). HHS again advised Plaintiff that if she wished to pursue the handful of disputed Rule 30(b)(6) topics to which HHS had asserted objections on October 28, 2022 and had not designated a witness, she would need to bring a motion to compel.

HHS did not hear back from Plaintiff again until about one week later. On March 7,

2023, Plaintiff suggested that the parties could potentially eliminate the need for a Rule 30(b)(6) deposition by agreeing to designate prior fact testimony as 30(b)(6) testimony. (Ex. 16). HHS responded that it was "open to a discussion" and proposed a compromise to resolve topic 24. Plaintiff agreed to HHS's proposal to resolve topic 24 and stated that she would "work on designating testimony from the previous depositions," but she wanted "to move forward with the scheduling of the 30(b)(6) deposition in the meantime if we cannot agree on designations." (*Id.*)

On March 10, 2023, HHS informed Plaintiff that it had reserved March 16 – the last day of discovery – for "the 30(b)(6) designees to sit for depositions regarding topics to which Defendant has not objected, in case we are unable to agree on designations." (Ex. 17). However, HHS did not hear back from Plaintiff until March 13. Plaintiff still had not sent any proposed Rule 30(b)(6) designations, but she promised to have them "done tonight so you have tomorrow and Wednesday to review." (Ex. 18). Plaintiff did not send the proposed Rule 30(b)(6) designations as promised.

The parties conducted four fact depositions of MEC members on March 14 and, during an off-the-record discussion at the end of the day, HHS informed Plaintiff that, given all of the MEC depositions that had been scheduled at the last minute, it was no longer practicable to adequately prepare for and defend Rule 30(b)(6) depositions within the discovery deadline. In response, Plaintiff served an amended Rule 30(b)(6) notice, setting March 16, 2023, as the date for the deposition. (Ex. 19). The amended Rule 30(b)(6) notice was virtually identical to the original notice. The amended notice did not reflect or respond to the parties' several discussions related to topics that had been resolved, nor did the amended notice respond to

HHS's previous objections. (*Id.*)

On March 15, 2023, HHS agreed to stipulate to an extension of the fact discovery deadline so that the parties could "continue to work in good faith through the remaining issues related to the 30(b)(6) topics." However, the parties agreed "that motion practice may be necessary to the extent some 30(b)(6) issues cannot be resolved." (ECF Doc. # 32 at 2). The Court granted the extension and set a new deadline for completion of the depositions by April 17, 2023. (ECF Doc. # 34). Plaintiff agreed to provide HHS with proposed designations of prior testimony to potentially resolve some or all of the Rule 30(b)(6) topics, but HHS did not hear from Plaintiff on this issue.

On March 24, 2023, after not hearing from Plaintiff on the Rule 30(b)(6) issue, HHS served Plaintiff with its Supplemental Responses and Objections to Plaintiff's Rule 30(b)(6) Deposition Notices. (Ex. 20). HHS maintained its original objections from October 28, 2022, but also asserted that at this juncture in the lawsuit, after more than ten months of discovery and fourteen fact depositions of HHS leaders who were the key decision-makers involved in Plaintiff's demotion, proceeding with a Rule 30(b)(6) deposition would be "unreasonably cumulative or duplicative" and would allow Plaintiff to have a second bite at the apple. In addition, HHS asserted that information relating to the topics in Plaintiff's Rule 30(b)(6) deposition notice could have been "obtained from some other source that is more convenient, less burdensome, or less expensive," and Plaintiff had "ample opportunity to obtain the information by discovery in the action." (*Id.*)

On March 28, 2023, Plaintiff finally sent HHS proposed Rule 30(b)(6) designations. (Ex. 21). However, Plaintiff would not commit to resolving Rule 30(b)(6) topics via

designations and, instead, stated that "while there may be designations for some testimony, such designation will not necessarily dispose of the need to have further questioning on the topic." (*Id.*)  Plaintiff did not provide a substantive response to HHS's March 24 objections. Instead, Plaintiff stated that she would unilaterally schedule the Rule 30(b)(6) deposition unless HHS brought a motion for a protective order.

On April 3, 2023, HHS served Plaintiff with signed Supplemental Answers to Plaintiff's First Set of Interrogatories, which HHS believes obviates the need for testimony related to topic 4.  (Ex. 28).  At this point, it is unclear whether Plaintiff will agree to resolve topic 4.

## LEGAL STANDARD

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Although courts "construe Rule 26(b)(1) broadly," the "scope of discovery is intended to focus on the actual claims or defenses that are [at] issue in the litigation."  *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2016 WL 6997113, *7 (D. Minn. Sept. 6, 2016) (internal citations omitted).  Parties are not, therefore, "entitled to discovery for the purpose of developing new claims or defenses that are not already identified in the pleadings." *Id*. (internal citation omitted).  A party seeking discovery "has the burden of showing the information's relevance."  *Chairez v. AW Distributing, Inc.*, 2023 WL 2071375, *2 (D. Minn. Feb. 17, 2023).  Indeed, and to prevent "fishing expeditions in discovery," the proponent of discovery must make a "threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not

reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.1992); *see also Cardiovascular Systems, Inc. v. Cardio Flow, Inc.*, 2019 WL 10945114, *2 (D. Minn. Nov. 11, 2019) (stating that "the liberality of discovery should not lead to a 'fishing expedition'"); *Mallak v. Aitkin Cty.*, 2016 WL 9088760, *9 (D. Minn. Dec. 22, 2016) (granting protective order and observing that "[p]art of this Court's role in preventing abuse of the discovery process involves adhering to Rule 26(b)'s requirement that only relevant material is discoverable").

The Federal Rules of Civil Procedure provide that "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). When granting a motion for a protective order, the Court may, among other things, "forbid[] the disclosure of discovery," "forbid[] inquiry into certain matters," or otherwise "limit[] the scope of disclosure or discovery to certain matters[.]" *Id.* at (A) and (D). "Because of liberal discovery and the potential for abuse, the federal rules 'confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'" *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (internal citation omitted); *see also Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F.Supp.2d 728, 757 (D. Minn. 2008) (observing that the Court "has broad discretion to fashion a protective order").

As the party moving for a protective order, HHS "has the burden to show good cause[.]" *Northbrook Digital*, 625 F.Supp.2d at 757. To determine whether a protective order is appropriate, "courts apply a balancing test to determine whether good cause has been shown, weighing the moving party's interest in the protective order against the opposing

party's interest in obtaining the information at issue." *Bores v. Domino's Pizza, LLC*, 2007 WL 9735903, *24 (D. Minn. Jan. 25, 2007); *see also Shukh v. Seagate Technology, LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013) (observing that "'a showing of irrelevancy of proposed discovery can satisfy the "good cause" requirement of Rule 26(c)'") (citing *Smith v. Dowson*, 158 F.R.D. 138, 140 (D.Minn.1994)).

## LEGAL ARGUMENT

I. **THE COURT SHOULD GRANT HHS'S MOTION FOR A PROTECTIVE ORDER AND PRECLUDE PLAINTIFF FROM TAKING RULE 30(b)(6) DEPOSITIONS RELATED TO TOPICS 1-6, 8-12, 14-15, 23, 25, 27, AND 29-31 BECAUSE THESE TOPICS ARE OVERLY BROAD AND IMPROPERLY FAIL TO DESCRIBE WITH REASONABLE PARTICULARITY THE MATTERS FOR EXAMINATION.**

The Federal Rules of Civil Procedure permit a party to

name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify . . . The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

The "effectiveness of" Rule 30(b)(6) "bears heavily upon the parties' reciprocal obligations." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). "First, the requesting party must reasonably particularize the subjects of the intended inquiry so as to facilitate the responding party's selection of the most suitable deponent" and the responding party, "having been specifically notified as to the specific areas of exploration, is obligated to produce a deponent who has been suitably prepared to respond to questioning within that scope of inquiry." *Id.* Significantly, and for Rule 30(b)(6) "to effectively

18

function," the party seeking a 30(b)(6) deposition "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Id.* Topics contained within a Rule 30(b)(6) notice

> are not sufficiently particular when they include: multiple potential lines of inquiry without clarification as to what will be discussed; mere reference to testimony which potentially included multiple issues; open ended topics, as a result of expansive phrasing, such that the organization to be deposed cannot determine the outer boundaries of the topic; or "not limited to" language rendering the scope unclear.

*Sage v. Bridgestone Americas Tire Operations, LLC*, 2020 WL 13043386, *2 (D. Minn. Jan. 27, 2020).

Topics 1-6, 8-12, 14-15, 23, 25, 27, and 29-31 within Plaintiff's Rule 30(b)(6) notice alternately seek "[a]ny and all facts, circumstances, and documents," "[a]ny and all facts, circumstances, documents, and discussions," "[a]ny and all facts, circumstances, discussions, documents, and meeting notes," or "[a]ny and all facts, circumstances, and findings" related to various factual matters. These topics are, however, improper. Indeed, the law is clear that Rule 30(b)(6) topics "which seek to elicit deposition testimony on all facts in support of a claim or contention . . . are overly broad, improper topics for a Rule 30(b)(6) deposition." *Fairview Health Servs. v. Quest Software Inc.*, 2021 WL 5087564, *6-*7 (D. Minn. Sept. 24, 2021) (denying motion to compel testimony related to a Rule 30(b)(6) topic that sought "all facts supporting" a party's assertion and observing that "many courts have found overbroad 30(b)(6) topics which would require the opposing party 'to marshal all of its factual proof'") (internal citation omitted); *see also Elsherif v. Mayo Clinic,* 2020 WL 5015825, *2 (D. Minn. August 25, 2020) (denying motion to compel and observing that "30(b)(6) topics 'which seek to depose on all of the bases for the claims in a

case and the contentions made in support of those claims' are overly broad" and that "permitting such broad inquiry via 30(b)(6) topics would be burdensome, unwieldy, and likely disproportionate to the needs of the case").

The Court should grant HHS's motion for a protective order accordingly and preclude Plaintiff from taking Rule 30(b)(6) depositions related to topics 1-6, 8-12, 14-15, 23, 25, 27, and 29-31 because these topics are overly broad and improperly fail to describe with reasonable particularity the matters for examination. Each of these topics is, therefore, unduly burdensome and disproportionate to the needs of the case. *See Atwood v. Union Pacific R.R. Co.*, 2022 WL 17585893, *9 (D. Neb. Dec. 12, 2022) (observing that "[i]t is widely accepted that Rule 30(b)(6) 'contention topics' which require an opposing party 'to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense' or claim are overbroad and improper" and that "Rule 30(b)(6) topics which seek to elicit deposition testimony on all facts in support of a claim or contention are unduly burdensome, unwieldy, and disproportionate to the needs of the case") (internal citation omitted).

## II. THE COURT SHOULD GRANT HHS'S MOTION FOR A PROTECTIVE ORDER AND PRECLUDE PLAINTIFF FROM TAKING RULE 30(b)(6) DEPOSITIONS RELATED TO TOPICS 19-23(d) AND 32 BECAUSE THESE TOPICS INAPPROPRIATELY SEEK LEGAL CONCLUSIONS AND INFORMATION PROTECTED BY THE ATTORNEY-CLIENT AND/OR ATTORNEY WORK PRODUCT PRIVILEGES.

Topics 19-23(d) and 32 all inappropriately seek testimony in the form of legal conclusions. However, any such testimony is protected by the attorney-client and/or attorney work product privileges.[2]

---

[2] As set forth in Section I of HHS's legal argument above, topic 23 is also objectionable

Topics 19 and 23(d) seek testimony about whether HHS "contends that Dr. Gustilo's speech interfered with the operations of" her department and "HHS's position on whether [Plaintiff's] Facebook posts interfered with Dr. Gustilo's role and performance[.]" Whether Dr. Gustilo's "speech" or other behaviors interfered with or otherwise disrupted the operations of the OB/GYN department is a key factor in the *Pickering* balancing test, which courts apply to determine whether an employee's speech in the workplace was protected by the First Amendment.[3] *See, e.g., Bailey v. Dept. of Elementary and Secondary Educ.*, 451 F.3d 514, 520-522 (8th Cir. 2006). Topics 20-22 seek legal conclusions about "HHS's contention that Dr. Gustilo's demotion did not occur under circumstances giving rise to an inference of discrimination," "HHS's contention . . . that Dr. Gustilo's personal beliefs served as the 'trigger' for her demotion," and "HHS's contention that it did not retaliate against Dr. Gustilo for her beliefs[.]"

The Court should grant HHS's motion for a protective order with respect to topics 19-23(d) because the law is clear that a party may not seek to elicit testimony regarding "legal issues" and that a Rule 30(b)(6) witness can be instructed not to answer questions at a deposition that call for information protected by the attorney-client and/or attorney work product privilege. *See Target Corp. v. ACE American Ins. Co.*, 576 F.Supp.3d 609, 622 (D. Minn. 2021) (observing that a party may instruct a Rule 30(b)(6) witness not to answer

---

because it is overly broad and improperly fails to describe with reasonable particularity the matters for examination. As such, topic 23 is unduly burdensome and disproportionate to the needs of the case.

[3] At Count III of her Complaint, Plaintiff alleges a claim for "42 U.S.C. § 1983 Deprivation of Rights (First Amendment Retaliation)" and asserts that HHS "retaliated against Plaintiff, in violation of the First Amendment[.]" (ECF Doc. #1).

questions "that would elicit privileged communications or protected work product");
*Fairview Health Servs.*, 2021 WL 5087564 at *6 (denying motion to compel a party to
designate a Rule 30(b)(6) witness to testify regarding the interpretation of two contracts
because it would "impermissibl[y] seek[] to have the Rule 30(b)(6) deponent testify about
legal conclusions"); *Johnson v. Charps Welding & Fabricating, Inc.*, 2017 WL 9516243, *17
(D. Minn. March 3, 2017) (stating that "this Court recognizes the folly in deposing a Rule
30(b)(6) designee on a subject that calls only for legal conclusions"); *In re: RFC & RESCAP
Liquidating Trust Actions*, 2017 WL 548909, *4 (D. Minn. Feb. 11, 2017) (stating that a Rule
30(b)(6) witness may not answer questions related to a "legal issue"); *Atwood v. Union
Pacific R.R. Co.*, 2022 WL 17585893, *9 (D. Neb. Dec. 12, 2022) (observing that "[c]ourts
have concluded that questioning on contention topics in a Rule 30(b)(6) deposition is
burdensome, poses serious work product issues, and is not the proper vehicle for obtaining a
summary of the opposing parties' allegations. Discovery under other rules is a more
appropriate method for obtaining such information").

Topic 32 seeks the "factual basis for HHS's affirmative defense that Dr. Gustilo failed
to mitigate her damages[.]"[4]  But this topic is inappropriate because "[w]hen a 30(b)(6)
witness is asked to disclose" facts "supporting a . . . defense, it is 'extremely difficult to
distinguish between "facts" . . . and the issue of why those facts have legal consequences,
which usually has a work-product . . . dimension[.]'"  *Blackmore v. Union Pacific R.R. Co.*,
2022 WL 3718115, *6 (D. Neb. Aug. 29, 2022).  Indeed, "when the 30(b)(6) witness is asked

---

[4] Topics 33, 34, and 35 also inappropriately sought testimony related to HHS's affirmative
defenses.  But Plaintiff voluntarily withdrew these topics on November 17, 2022 in response
to HHS's objections.  (Ex. 13).

for all facts supporting, for example, the failure to mitigate defense, he will essentially be parroting the lawyer's trial strategy for presenting evidence in favor of that defense[.]" *Id.*; *see also Atwood*, 2022 WL 17585893 at *8, *10 (granting defendant's motion for a protective order relating to topics that sought testimony regarding defendant's affirmative defenses because "[i]t is improper to directly question a lay witness regarding a party's legal contentions"). The Court should grant HHS's motion for a protective order accordingly.

III. **THE COURT SHOULD GRANT HHS'S MOTION FOR A PROTECTIVE ORDER AND PRECLUDE PLAINTIFF FROM TAKING RULE 30(b)(6) DEPOSITIONS RELATED TO TOPIC 36 BECAUSE THIS TOPIC INAPPROPRIATELY SEEKS "DISCOVERY ON DISCOVERY."**

Topic 36 seeks testimony regarding the "process used by HHS and its agents to search for and collect documents responsive to any of Dr. Gustilo's First Set of Discovery Requests," including, among other things, "the types of information systems searched," "the specific devices searched," and "the keywords used for such searches."

The Court should grant HHS's motion for a protective order because topic 36 improperly seeks "discovery on discovery," which makes this topic neither proportional to the needs of the case nor relevant to the claims, defenses, or facts at issue in this litigation. *See Catlin v. Wal-Mart Stores, Inc.*, 2016 WL 7974070, *1 (D. Minn. Sept. 22, 2016) (observing that "'requests for such meta-discovery should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum'" and denying plaintiff's motion to conduct collateral discovery because it was "neither relevant to a claim or defense in the litigation nor proportional to the needs of the case") (internal citation omitted); *West Virginia Pipe Trades Health & Welfare Fund v.*

*Medtronic, Inc.*, 2015 WL 12778845, *2 (D. Minn. June 12, 2015) (prohibiting plaintiff from questioning a 30(b)(6) witness regarding defendant's document retention and collection practices in discovery because these topics were "not reasonably calculated to lead to the discovery of admissible evidence as they merely seek to discover [defendant's] document retention and discovery practices, topics not subject to this lawsuit").

A protective order is also appropriate because topic 36 inappropriately seeks information that may be protected by the attorney work product privilege. *See Bombardier Rec. Prods., Inc. v. Arctic Cat, Inc.*, 2014 WL 10714011, *14-15 (D. Minn. Dec. 5, 2014) (denying plaintiff's motion to compel defendant to provide a 30(b)(6) witness to testify regarding its efforts to collect and search for documents and electronically stored information because such "discovery on discovery" was not relevant to any claim or defense and because it "treads dangerously close to encroaching on attorney work product privilege"). The Court should grant HHS's motion accordingly.

**IV.** **THE COURT SHOULD GRANT HHS'S MOTION FOR A PROTECTIVE ORDER AND PRECLUDE PLAINTIFF FROM TAKING RULE 30(b)(6) DEPOSITIONS RELATED TO TOPICS 1-6, 8-12, 14-23, 25-27, AND 29-31 PURSUANT TO RULE 26(b)(2)(C) BECAUSE THESE TOPICS ARE NOT APPROPRIATE FOR A 30(b)(6) DEPOSITION AND/OR BECAUSE EACH AND EVERY ONE OF THESE TOPICS COULD HAVE - AND SHOULD HAVE - BEEN EXPLORED DURING THE DEPOSITIONS OF FACT WITNESSES OR VIA OTHER DISCOVERY METHODS.**

It is generally appropriate for a Rule 30(b)(6) designee to testify regarding relevant corporate policies/procedures, corporate/organizational structure, corporate/organizational history (such as past claims/lawsuits), and organizational decisionmaking (such as entering into a contract or demoting an employee). *See, e.g., Bertrang v. Wisconsin Central, Ltd.*, 301 F.R.D. 364, 366-368 (D. Minn. 2014) (granting motion to compel defendant to provide a Rule

30(b)(6) corporate designee to testify regarding defendant's policies, practices, and procedures); *West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 2017 WL 9325026, *2-*3 (D. Minn. Oct. 12, 2017) (providing a prototypical example of Rule 30(b)(6) deposition topics, including organizational structure, corporate policies and procedures, the bases for corporate decisionmaking (buying and selling securities), and the organization's accounting practices).

However, the Federal Rules of Civil Procedure provide that "the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]" Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii).

As set forth above, Plaintiff had ample opportunity to obtain the discovery sought by its Rule 30(b)(6) topics – most of which seek "fact" testimony, not "corporate" testimony – during the depositions it took of fifteen fact witnesses and by other discovery mechanisms, including interrogatories. Plaintiff's failure to do so and to now insist on Rule 30(b)(6) depositions amounts to trying for a second bite at the apple. Plaintiff should not be permitted to re-depose several of the same witnesses it has already deposed and to try and ask new or different questions that it could have posed during previous depositions. This is the definition of "unreasonably cumulative or duplicative." The Court should grant HHS's motion for a protective order and thereby preclude Plaintiff from getting a second bite at the apple.

## **CONCLUSION**

For all of these reasons, HHS respectfully requests that the Court grant its motion for

a protective order in all respects.

Dated: April 3, 2023

MARY F. MORIARTY
Hennepin County Attorney

*/s/Matthew S. Frantzen*
Matthew S. Frantzen (#332793)
Katlyn J. Lynch (#398242)
Assistant Hennepin County Attorneys
A-2000 Government Center
300 South Sixth Street
Minneapolis, MN 55487
Telephone: (612) 596-0075
Matthew.Frantzen@hennepin.us
Katie.Lynch@hennepin.us

*Attorneys for Defendant Hennepin Healthcare System, Inc.*