# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Dr. Tara Gustilo, M.D., <br><br> Plaintiff, <br><br> v. <br><br> Hennepin Healthcare System, Inc. <br><br> Defendant. | Case No. 22-cv-352 (SRN/HB) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

## INTRODUCTION

Defendant Hennepin Healthcare System, Inc.'s ("Defendant" or "HHS") Motion for Protective Order creates a "he said/ she said" scenario that buries one of the most essential aspects underlying its opposition to Plaintiff' Dr. Tara Gustilo's ("Plaintiff" or "Dr. Gustilo") 30(b)(6) Deposition Notice under mounds of emails and accounts of meetings between counsel as well as the deposition testimony of individual fact witnesses. Yet, putting all this noise aside, and at the heart of its dispute, there are only **seven topics** to which the Parties could not agree on. But despite this number, and despite several months of meeting and conferring and representing to this Court that the Parties were diligently working towards narrowing the scope of Plaintiff's 30(b)(6) Deposition, Defendant, in the eleventh hour, inexplicably decided to object *entirely* to the production of *any* 30(b)(6) designee in this Action.

Defendant uses the majority of its memorandum in support of its Motion for protective order to misconstrue the nature of the Parties' meet and confers. This tactic mischaracterizes several key aspects of the Parties' meetings and also ignores the basic tenants of the 30(b)(6) deposition in several material ways, including the argument that Plaintiff had the opportunity to depose "key witnesses" regarding the topics that Plaintiff noticed to HHS. Defendant's Motion for protective order misses the mark by woefully misunderstanding the purpose of the 30(b)(6) depositions.

But the issue revolving around the 30(b)(6) deposition is not about any lack of diligence. In fact, up until March 27, 2023, Defendant had agreed to produce its designees for a deposition for the majority of the noticed topics. Defendant represented as such to this very Court when it stated it needed more time to prepare them for such topics. Yet, on March 27, Defendant disregarded the several months of meeting and conferring, as well as its representations to this Court that it stipulated to the occurrence of a 30(b)(6) deposition. Defendant does not explain itself or its sudden and unreasonable refusal in its brief but improperly seeks what appears to be an outright blanket denial of Plaintiff's right to depose HHS; accordingly, Defendant's Motion for protective order should be denied.

## FACTUAL BACKGROUND

On October 3, 2022, Plaintiff noticed the 30(b)(6) deposition of HHS for October 17, 2022. (St. Amant Decl. Ex. A.) This Notice included thirty-six (36) topics relating to Dr. Tara Gustilo's demotion.

### *The Parties' Discussions Regarding*
### *Plaintiff's 30(b)(6) Deposition of HHS*

On Thursday, October 13, 2022, Counsel for Plaintiff and Defendant met and conferred regarding the noticed topics. (St. Amant Decl. ¶ 3.) During this meet and confer, counsel for Defendant questioned the need for a 30(b)(6) deposition when the Parties were currently working through the scheduling of four noticed depositions: Dr. David Hilden, Dr. Daniel Hoody, Dr. Nezworski, and Jennifer Hauff. Those depositions had also been (separately) noticed on October 3, 2022, along with Plaintiff's 30(b)(6) Notice of HHS. (*Id.*, Ex. B.) Unlike Plaintiff's 30(b)(6) Notice, these individual deposition notices contain no noticed topics. (*Id.*) Plaintiff's counsel attempted to explain why Plaintiff wished to exercise the mechanisms afforded to her under Rule 30 of the Federal Rules of Civil Procedure to depose HHS—and the key differences in the testimony of individual witnesses as opposed to an organization. (*Id.* ¶ 3.) Counsel for Defendant suggested the idea of designating certain individuals for certain topics so that such witnesses would be able to sit for both depositions on the same day. (*Id.*) Plaintiff's counsel expressed that they were open to the possibility. (*Id.*) However, the Parties came to no certain agreement upon the topics of the 30(b)(6) Notice or the designations during this meeting but agreed to meet and confer further in an effort to come to some resolution. (*Id.*)

On October 28, 2022, Defendant served its objections. (*Id.*, Ex. C.) While Defendant objected to several of the topics on the basis that such topics were "vague, overly broad, unduly burdensome, not proportional to the needs of the case, cumulative, duplicative, failing to describe with reasonable particularity the matters for examination," the phrase "any and all" used in several of the noticed topics was never specifically raised as objected

to or specifically at issue. (*Id*.) Defendant's response included the individuals whom it intended to designate as its corporate witnesses for 23 of the 26 topics. (*Id*.)

On November 2, 2022, Plaintiff's counsel corresponded with Defendant's counsel regarding Defendant's objections to make clear that Defendant must produce a designee for the noticed topics absent a protective order from the Court:

> [I]n response to Defendant's objections, an organization noticed for a 30(b)(6) deposition bears the burden of demonstrating to the court that the notice is objectionable or insufficient. *See, e.g., Beach Mart, Inc. v. L&L Wings, Inc.* 302 F.R.D. 396, 406 (E.D..C. 2014). The organization cannot make its objections and then provide a witness that will only testify within the scope of its objections. *Id*.

(*Id*., Ex. D.) Plaintiff's counsel also sought to confirm whether Defendant intended to designate any further individuals for the topics which lacked designations, as the first fact deposition was rapidly approaching:

> Second, we noticed that several of the topics in Plaintiff's notice still have "no designation." We are a little confused by this. Where there is "no designation," do you intend to designate a general representative—apart from the designations you have listed—to be able to testify to the topics where you have not designated an individual specifically? With Dr. Hoody's deposition coming up next week, we want to clarify this so we can plan accordingly. As a reminder, it is improper to simply refuse to attend, or in this instance, designate an individual, on the basis of any objections. *Beach Mart, Inc.*, 302 F.R.D. at 406.

(*Id*.) Counsel for Defendant responded, assuring Plaintiff's counsel that Hoody would not be produced as a 30(b)(6) designee:

> Second, we do not intend to designate Dr. Hoody as a Rule 30(b)(6) designee for any of the topics set forth in your notice. Therefore, we believe his fact deposition can go forward as scheduled while we continue to work through the Rule 30(b)(6) issue with you.

(*Id.*) In further response to counsel's initial email, counsel for Defendant stated: "Consistent with this understanding of the appropriate use and role of a Rule 30(b)(6) designee, **Defendant has designated a representative to testify regarding 23 of the 36 topics set forth in the deposition notice** (topics 3, 4, 7, 9-12, 14, 16-27, and 29-31)." (*Id.*) (emphasis added.) Defendant also agreed to designate Ms. Hauff for topic 15 in the same email correspondence. (*Id.*)

In response, Plaintiff's counsel compromised on November 17, 2022, via email correspondence, and withdrew Topics 13 and 28, agreeing that documents produced were sufficient to support the information sought in such topics. (*Id.*) Plaintiff also agreed to withdraw Topics 33-35. (*Id.*) Thus, by November 17, 2022, **the number of disputed topics dwindled from thirteen to eight topics**. (*Id.*) Topic 24 would ultimately also be agreed upon as supported by the documents produced by HHS. (St. Amant Decl. Ex. L.) In this email correspondence, Plaintiff once again reminded Defendant's counsel and reiterated that if they refused to produce designees for the remaining topics, they must seek a protective order from the Court to do so. (*Id.*, Ex. D.) ("If Defendant continues to object and refuse to produce a designee, Defendant must seek a protective order").

### The Deposed Witnesses Were Not Adequately
### Prepared to Testify on behalf of HHS

### Dr. Daniel Hoody

Dr. Hoody's deposition was the first to occur and took place on November 7, 2022. (St. Amant Decl. Ex. E.) While Defendant asserts in its initial memorandum that "Plaintiff had ample opportunity to ask Dr. Hoody about his decision making and the facts and

circumstances leading to the demotion at issue[]" [Dkt. 37 at 3], during his deposition, Dr. Hoody did not know or remember basic facts about HHS or the circumstances surrounding Dr. Gustilo's demotion. Regardless, at the time of his deposition, he was not designated as an HHS representative for any 30(b)(6) topics. (St. Amant Decl. Ex. C.)

- When asked whether Hennepin Health's official title was in the year of 2012, Dr. Hoody did not know the answer. (St. Amant Decl. Ex. E [Hoody Dep.] 12:13-16.)

- When asked whether there was a reason that HHS kept people in the interim chair position for a certain amount of time, Dr. Hoody responded that he did not know. (*Id.*, [Hoody Dep.] 16:6-11.)

- When asked what "communication and cohesion issues" the OBGYN Department began to have in the years of 2019 or 2020, Dr. Hoody stated: "I don't recall the specifics. I just recall that was the flavor of the issues[.]" (*Id.,* [Hoody Dep.] 23:8-11.)

- Dr. Hoody could not recall the specific time or circumstances under which he first met Dr. Gustilo. (*Id.*, [Hoody Dep. 19:17-19.])

- Dr. Hoody could not recall aspects of the dispute surrounding Dr. Gustilo's Facebook posts. (*Id.*, [Hoody Dep.] 50: 23-51: 6; 57:21-58:3.)

- Dr. Hoody did not recall the substance of the complaints underlying that Dr. Gustilo did not practice obstetrics, only gynecology. (*Id.*, [Hoody Dep.] 82:7-11.)

- Dr. Hoody states he did not recall "concerns around issues of racial justice 18 and the way that is manifested in the daily work of [the OBGYN] department. (*Id.*, [Hoody Dep.] 56: 16-25.)

During his deposition, Dr. Hoody also referenced Dr. Hilden as having knowledge regarding crucial aspects of Dr. Gustilo's demotion, including, for example, several of the OBGYN Department members approaching Dr. Hilden regarding their concerns about Dr. Gustilo. (*Id.*, [Hoody Dep.] 43:18-44:5; 44:11-17.) Dr. Hoody, also for example, referenced Dr. Hilden as the primary contact for dealing with the third-party conducting the "study" of Dr. Gustilo's performance as Chair of the OBGYN Department. (*Id.*, [Hoody Dep.] 76:15-18.)

Despite this lack of knowledge, counsel for Plaintiff reviewed Dr. Hoody's 145-page deposition and agreed to designate some portions of his testimony for Topics 3, 4, 7, and 10 in an attempt to narrow the scope of the 30(b)(6) Deposition. (St. Amant Decl. Ex. F.)

## Jennifer Hauff

Jennifer Hauff's deposition occurred on November 16, 2022. Ms. Hauff was a former employee who left HHS in May of 2022. (St. Amant Decl. Ex. G, [Hauff Dep.] at 12:15-16.) Ms. Hauff was designated to testify to the following Topics:

**Topic 4**: Any and all facts, circumstances, and documents relating to, concerning, or surrounding Hennepin Healthcare System, Inc.'s ("HHS") diversity, equity, and inclusion policies, initiatives, and training since May of 2020, including:

    a.   the objectives and goals behind such policies, initiatives, and training;

b. the sources from where such policies, initiatives, and trainings are derived;

c. who is required to adhere to or undergo any diversity, equity, and inclusion training; and

d. the frequency of which employees are subjected to any training in comparison to any and all other mandated training for HHS employees.

**Topic 15**: Any and all facts, circumstances, and documents concerning or related to the alleged 2017 Incident as described on pages 2-3 of Defendant's Response to Plaintiff's EEOC Charge.

**Topic 17**: HHS's policy and position regarding institutional political affiliation.

**Topic 18**: HHS's policy and position regarding the political affiliation of its employees.

**Topic 24**: HHS's retention and use of Human Systems Dynamics Institute for the investigation; Topic 25: Human Systems Dynamics Institute's investigation or "environmental study" of Dr. Gustilo and the OBGYN Department;

**Topic 26**: HHS's belief that it has a dual system for white people and people of color, as stated by Chief Financial Officer Derrick Hollings in the "Nobody Gets a Pass" video.

(St. Amant Decl. Ex. C.) Contrary to Defendant's assertion on Page 7 of its memorandum in support of its motion for protective order, Ms. Hauff was not designated to testify on behalf of HHS regarding Topic 21; rather, Defendant chose to designate Dr. Hilden. (*Id*.) Moreover, the Parties had yet to agree on whether individual depositions and

30(b)(6) depositions would occur on the same date at the time Ms. Hauff's deposition was set to occur. (St. Amant Decl. ¶ 11.) Accordingly, Plaintiff did not notice Ms. Hauff's designated portion of the 30(b)(6) deposition to occur on November 16, 2022. (*Id.*)

This did not matter as throughout her deposition, it became clear to Plaintiff's counsel that Ms. Hauff was not adequately prepared to testify regarding some of the designated topics. (*Id.* ¶ 12.) Of course, this is understandable considering that Ms. Hauff was no longer working for HHS; moreover, Ms. Hauff could not specify the documents she reviewed in preparation for her deposition, making it unclear whether she actually had been prepared for the noticed topics as a designated representative. (St. Amant Decl. Ex. G [Hauff Dep. 13:12-19.].) Her lack of preparation became especially clear when, despite being designated as HHS's representative regarding Topic 24, the retention of Human Systems Dynamic Institute for the investigation or study of Dr. Gustilo's performance as Chair, Ms. Hauff testified that she "was not directly involved in the decision to retain them." (*Id.*, [Hauff Dep. 43:23-44:2].) Several times throughout her deposition, Ms. Hauff answered that she didn't know or couldn't remember. (*Id.*, [Hauff Dep.] 59: 15-18) (Ms. Hauff did not know whether Dr. Gustilo was given more or the same amount of interview time during the third-party investigation/study); (*Id.*, [Hauff Dep.] 77:25-78:2) (Ms. Hauff could not recall the specific time frame that the previous 2017 Incident as described in Plaintiff's 30(b)(6) Notice occurred); (*Id.*, [Hauff Dep.] 21:7-13) (Ms. Hauff did not know whether a policy regarding the noticed 30(b)(6) 2017 Incident had changed since the Incident occurred).

On an off-the-record break during Ms. Hauff's deposition, counsel for Defendant asked whether Plaintiff would depose Ms. Hauff as HHS's 30(b)(6) witness that same day, or, whether such testimony from her individual deposition could be designated as 30(b)(6) testimony. (St. Amant Decl. ¶ 13.) Counsel for Plaintiff stated that Plaintiff would not depose Ms. Hauff as HHS's 30(b)(6) representative that day for several reasons: first, as HHS's designated representative, it appeared Ms. Hauff did not adequately prepare to testify on the noticed topics; (*Id*. ¶ 14.) further, the Parties had never confirmed that such individual witness and 30(b)(6) depositions would occur back-to-back, and as such, no 30(b)(6) deposition had been noticed for that day. (*Id*.) Defendant did not further rebut these proffered reasons and agreed that Ms. Hauff would only be deposed as an individual fact witness on November 16, 2022. (*Id*. ¶ 15.)

Despite this lack of knowledge, counsel for Plaintiff reviewed Ms. Hauff's 109-page deposition and agreed to designate some portions of her testimony for Topics 3, 6, 7, 8, and 17 in an attempt to narrow the scope of the 30(b)(6) Deposition. (St. Amant Decl. Ex. H.)

**Dr. Laura Nezworski**

Dr. Nezworski's December 6, 2022 deposition was the shortest out of the four primary "key witness" depositions due to her somewhat limited role in Dr. Gustilo's demotion as her successor. While Dr. Nezworski provided some testimony relevant to Plaintiff's 30(b)(6) Notice, her knowledge was also limited. For example, when asked whether another doctor was considered for the chair position leading up to Dr. Gustilo's demotion, Dr. Nezworski did not know. (St. Amant Decl. Ex. I [Nezworski Dep.] 61:8-10.)

Nevertheless, in an effort to compromise, counsel for Plaintiff reviewed Dr. Nezworski's 85-page deposition and agreed to designate some portions of testimony as 30(b)(6) testimony in an attempt to narrow the scope of the 30(b)(6) deposition. (*Id.*, Ex. J.)

### Dr. David Hilden

Dr. David Hilden arguably had the most knowledge out of the four key witnesses, as demonstrated in the large number and portion of designated testimony resulting from his deposition. (St. Amant Decl. Ex. K.) Designated topics include 3, 6, 7, 8, 9, 10, 16, 22, 23, 24, 26, 31. (*Id.*) While a large portion of Dr. Hilden's testimony was salvageable as 30(b)(6) testimony, Plaintiff's counsel made clear that such designated testimony would certainly narrow the scope of the deposition and noticed topics, but not entirely dispose of the necessity given what Dr. Hilden could testify to without adequately preparing as a 30(b)(6) designated representative. (*Id.*)

### *The Seven Remaining Topics at Issue*

Pursuant to several conversations regarding Plaintiff's noticed topics, the below topics remained in dispute:

**TOPIC 1:** Any and all facts, circumstances, and documents concerning or related to the allegations of Dr. Tara Gustilo's ("Dr. Gustilo" or "Plaintiff") Complaint.

**TOPIC 2:** Any and all facts, circumstances, and documents related to the assertions made in Defendant's Response to Plaintiff's Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination ("Charge").

**TOPIC 5:** Any and all facts, circumstances, and documents concerning HHS's culturally congruent care model, as described, defined, and alleged in ¶ 24 of Plaintiffs Complaint.

**TOPIC 6:** Any and all facts, circumstances, and documents concerning the June 5, 2020 letter sent on behalf of the OBGYN Department after the murder of George Floyd.

**TOPIC 8:** Any and all facts, circumstances, and documents surrounding the meeting HHS leadership held with physicians of the OGBYN Department outside of the presence of Dr. Gustilo, as described on Page 9 of Defendant's Response to Plaintiff's EEOC Charge

**TOPIC 32:** The factual basis for HHS's affirmative defense that Dr. Gustilo failed to mitigate her damages following her demotion.

**TOPIC 36:** The process used by HHS and its agents to search for and collect documents responsive to any of Dr. Gustilo's First Set of Discovery Requests, including: a. the custodians of such documents; b. the types of information systems searched (such as computers, file servers, e-mail, text message, social media, etc.); c. the information systems searched (such as an internal database, Microsoft Exchange Server, etc.); d. the specific devices searched; and 18 e. the keywords used for such searches.

(St. Amant Decl. Ex. A.)

### *Defendant Refuses to Produce Previously Agreed Upon Designated Witnesses in the Eleventh Hour*

The last substantive communications regarding Plaintiff's 30(b)(6) deposition of Defendant occurred in late November and early December when the parties stipulated to extend discovery. [Dkt. 25.] Plaintiff had advised, in respect to the remaining disputed 30(b)(6) topics, that Defendant must seek a protective order if it refused to designate and produce witnesses for such topics. (St. Amant Decl. Ex. D.)

In February 2023, after several depositions and working through scheduling conflicts, Plaintiff once again requested Defendant provide availability for HHS's 30(b)(6) deposition. (St. Amant Decl. ¶ 20.) During a meet and confer that immediately followed the Parties' IDR regarding the medical executive committee depositions, Plaintiff reiterated that it was Defendant's obligation to seek a protective order, which had been emphasized in email correspondence leading up to the extension of discovery. (*Id*.) Counsel for Defendant once again stated they would look at the remaining disputed topics to discern whether further compromises could be made. (*Id*.)

On March 7, 2023, counsel for Plaintiff wrote to Defendant's counsel:

"I additionally wanted to follow up on the remaining 30(b)(6) topics that we have yet to come to an agreement on. Matt, I know you were going to look at them again to determine whether there was any room for compromise. Please let me if you have some time today after the deposition to discuss this as well as the potential designation of testimony as 30(b)(6) testimony."

(St. Amant Decl. Ex. L.) Plaintiff offered the prospect of designating of pre-existing testimony in an effort to narrow the scope of the 30(b)(6) deposition; this idea to designate testimony was based on Defendant's counsel's initial suggestions to do so in previous meet and confers as well as during Ms. Hauff's deposition. (St. Amant Decl. ¶ 22.) In response, Defendant's counsel requested that Plaintiff's counsel designate their *own* client's testimony for them, responding "[w]ith respect to designating testimony, we are open to a discussion. To the extent there is testimony that you believe could be designated, please send us the specific transcript pages and testimony and tell us how you believe that may satisfy particular 30(b)(6) topics." (St. Amant Decl. Ex. L.)

On March 8, 2023, in an effort to compromise and save time, Plaintiff's counsel agreed to designate HHS's 30(b)(6) testimony but requested that the 30(b)(6) deposition be scheduled in the meantime in the event that the designations could not be agreed upon. (St. Amant Decl. Ex. L.) On March 9, 2023, due to a family emergency, Dr. Gustilo was unable to sit for her deposition. (St. Amant Decl. ¶ 23.) Defendant agreed to the rescheduling of Dr. Gustilo's deposition, even though it meant likely pushing her deposition past the discovery deadline. (*Id*.)

Plaintiff's 30(b)(6) deposition of HHS was thus scheduled for the last day of discovery, March 16, 2023, as counsel for Defendant stated: "In follow-up to your March 8 request below, we have reserved Thursday, 3/16, for the 30(b)(6) designees to sit for depositions regarding topics to which we have not objected, in case we are unable to agree on designations." (St. Amant Decl. Ex. M.)

On March 13, 2023, Plaintiff's counsel once again corresponded with Defendant's counsel regarding the 30(b)(6) deposition to inquire about what time Defendant's designated representatives would be available to sit for HHS's deposition, which Defendant's counsel had agreed would take place on March 16, 2023. (St. Amant Decl. Ex. N.) Plaintiff's counsel also stated, but did not promise outright, "I am hoping to have designations done tonight so you have tomorrow and Wednesday to review." (*Id*.) However, with over 500 pages of deposition testimony to review, this hope ended up being impractical. (*Id*.)

Defendant's counsel also found themselves running up against a deadline that was impractical to meet considering the circumstances; on March 14, 2023, Plaintiff served on

Defendant an amended 30(b)(6) deposition solely to formalize the previously agreed upon date of March 16, 2023. (St. Amant Decl. Ex. O.) The Parties once again met and conferred via Zoom regarding the upcoming 30(b)(6) Notice. (*Id*. ¶ 27.) During this meeting, Defendant's counsel stated that its designees were not prepared to testify on March 16, 2023 as Defendant's counsel had not had time to prepare such witnesses. (*Id*.) During this meeting, the Parties agreed that they would stipulate to extend discovery for the limited purpose to take the depositions of Dr. Gustilo and of HHS. (*Id*.) During this Zoom meeting, Defendant's counsel assured Plaintiff's counsel that because the 30(b)(6) deposition would be once again delayed, Plaintiff's counsel could take more time in completing Defendant's designations for them. (*Id*. ¶ 28.)

During this time, Plaintiff's counsel drafted the proposed stipulation for the extension of discovery on behalf of the Parties, which was filed with this Court on March 16, 2023. [DKT. 32.] This stipulation stated:

> "Additionally, the 30(b)(6) deposition of HHS was recently scheduled to take place on March 16, 2023, the last day of discovery. However, because of Defendant's counsels' and their clients' scheduling conflicts and the need to adequately prepare for and defend eleven depositions in this case that were recently approved by the Court and taken during the last week and a half of the discovery period, Defendant's counsel advised Plaintiff's counsel that **Defendant needed additional time to adequately prepare HHS's designated representative(s) for the 30(b)(6) deposition topics. The Parties agree that, in light of the aforementioned timeline, Plaintiff should be permitted to conduct a 30(b)(6) deposition of Defendant after the close of discovery**."

[Dkt. 32.] (emphases added.) Plaintiff's counsel also continued to work through the 500 pages of deposition testimony to designate HHS's 30(b)(6) testimony. (*Id*. ¶ 29.)

Then, out of the blue, on March 24, 2023, Defendant served supplemental responses and objections to Plaintiff's moot 30(b)(6) notice—the primary purpose of which was to solidify the scheduled date and provide zoom information. (St. Amant Decl. Ex. O.) In the email serving such responses, counsel for Defendant stated: "As set forth in our attached Supplemental Responses and Objections, we will not be providing a 30(b)(6) designee absent an order from the Court. As we have advised you in the past, you will need to bring a motion to compel." (St. Amant Decl. Ex. P.) In these responses, Defendant retracted its agreement to produce individuals for previously-agreed upon topics (topics 3, 4, 7, 9-12, 14, 16-27, and 29-31), now asserting for each one of them a multitude of new objections, but especially:

> "Plaintiff's attempt to take 30(b)(6) testimony related to this topic is nothing more than an end run – an improper attempt to remedy the fact that plaintiff failed to conduct fact discovery in a thorough and diligent manner.
>
> Defendant will not designate a witness to testify regarding this topic absent an order from the Court."

(*Id.*) On March 28, 2023, Plaintiff's counsel responded with the completed designations, which were organized in excel spreadsheets by deposition and included the text of the proffered designation along with the cite and topic to which such testimony was being designated for. (St. Amant Decl. Ex. Q.) Plaintiff's counsel also sought to clarify "Defendant's sudden and outright refusal to produce a 30(b)(6) designee at all." (*Id.*) Plaintiff's counsel further sought to clarify the remaining topics in dispute but also cited back to Defendant's initial agreement to produce a designee for the majority of the noticed topics. (*Id.*) ("Consistent with this understanding of the appropriate use and role of a Rule

30(b)(6) designee, Defendant has designated a representative to testify regarding 23 of the 36 topics set forth in the deposition notice (topics 3, 4, 7, 9-12, 14, 16-27, and 29-31)." Plaintiff's counsel also assured Defendant's counsel that Defendant had over two weeks to review the designations before the deposition was hopefully set to take place on April 13, 2023. (*Id.*)

The Parties once again met and conferred regarding Defendant's objections to the 30(b)(6) Deposition of HHS on March 29, 2023. This time, and in line with Defendant's supplemental responses and objections, Defendant's counsel raised new issues with the wording of the topics—particularly taking issue with the phrase "any and all" on topics that Defendant had selected designated representatives to testify on. (*Id.* ¶ 32.) During this meet and confer, Defendant's counsel provided no substantial explanation for the sudden refusal to provide designees for the previously-agreed upon topics beyond once again reciting that Plaintiff had the opportunity to depose several fact witnesses. (*Id.*) Counsel for Plaintiff yet again reiterated the purpose of the 30(b)(6) deposition and why Plaintiff sought to obtain HHS's testimony regarding aspects of her demotion. Plaintiff also attempted to ensure Defendant that the designations would likely dispose of the need to obtain testimony regarding several topics, including for example, Topic 7 and Topic 10. (*Id.*) Plaintiff's counsel urged Defendant's counsel to review the designations. Defendant never responded and instead brought the instant motion for a protective order. (*Id.*)

## LEGAL STANDARD

Under Rule 30 of the Federal Rules of Civil Procedure, "a party may name as the deponent a public or private corporation, a partnership, an association, a governmental

agency, or other entity and must describe with reasonable particularity the matters for examination." Rule 30 further states, "[t]he named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Importantly, "[t]he persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

A party responding to a 30(b)(6) Notice "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) citing *Protective Nat. Ins. v. Commonwealth Ins.,* supra at 278, quoting *Mitsui & Co. v. Puerto Rico Water Resources Authority,* 93 F.R.D. 62, 67 (D.P.R.1981); *Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D.Neb.1995). Once notified as to the reasonably particularized areas of inquiry, the "corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and *binding* answers on behalf of the corporation." *Prokosch*, 193 F.R.D. at 683 citing *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989) (emphasis added).

If need be, the responding party must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits; any other interpretation of the Rule would allow the responding corporation to "sandbag" the

depositional process "by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial." *Id.* at 639.

Under the Federal Rules of Civil Procedure, the court may issue a protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," upon a showing of good cause. Fed. R. Civ. P. 26(c). The party seeking the protective order has the burden to establish good cause for the issuance of the order and the party's alleged harm, if a protective order is not granted, must be based on "more than stereotypical and conclusory statements." *Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2,* 197 F.3d 922, 926 (8th Cir. 1999) (citations omitted).

In determining whether to issue a protective order, courts apply a balancing test to determine whether good cause has been shown, weighing the moving party's interest in the protective order against the opposing party's interest in obtaining the information at issue. *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3rd Cir. 1994); *Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993).

## ARGUMENT

### I. PLAINTIFF HAS A RIGHT TO DEPOSE HHS ON THE NOTICED TOPICS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE

As an initial matter, and in rebuttal to a constant theme running throughout Defendant's motion, Plaintiff is not requesting a "second bite at the apple" by virtue of noticing her right to a 30(b)(6) deposition of HHS. By claiming this, Defendant fails to

understand the critical differences between the testimony of an individual witness and a 30(b)(6) witness, as well as the very nature and purpose of a 30(b)(6) deposition and why it exists. One of the fundamental purposes of the 30(b)(6) deposition is to address the recognition that because a corporation can only act through its employees, directors and agents, the potential thrives for an inquiring party to be bandied, from one corporate representative to another, vainly searching for a deponent who is able to provide a response that would be binding upon that corporation. *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637-38 (D. Minn. 2000). Thus, a 30(b)(6) deposition "curbs the 'bandying' by which various organizational officers or agents, while being deposed, disclaim knowledge of facts clearly known by some other officer or agent of the organization." *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 504 (D.S.D. 2009). Throughout the depositions, as several of the witnesses claimed to not know or remember key facts relating to Dr. Gustilo's demotion, there appeared to be such phenomenon of bandying.

Moreover, the District of Minnesota has stated that the noticing a 30(b)(6) deposition does not insulate a witness from an individual deposition. *National Presto Industries, Inc. v.* Civ. No. 18-3321 (SRN/BRT) 2020 WL 13250201 (D. Minn, Jan. 31, 2020). The inverse is true and still applies. "A Rule 30(b)(6) designee testifies to the position of the organization and not his or her personal opinion. *See id.* As such, Rule 30(b)(6) designees 'have the effect of binding a corporation in a way that fact witnesses cannot." *Bertrang v. Wis Cent., Ltd.*, 301 F.R.D. 364, 368 (D. Minn. 2014.) This concept was reiterated constantly in both email correspondence and throughout several meet and confers. (*See* St. Amant Decl.) Plaintiff noticed its 30(b)(6) deposition on the

same day it noticed depositions of four key fact witnesses; these topics were noticed before Plaintiff began depositions of such witnesses. In no way can this possibly be construed as a "second bite at the apple" when Plaintiff signaled from the get-go her intent to obtain HHS's testimony and position on key aspects of Dr. Gustilo's demotion.

The District of Minnesota has in the past recognized that the burden of preparing a 30(b)(6) witness may be an onerous one, but there are no "less onerous means of assuring that the position of a corporation, that is involved in litigation, can be fully and fairly explored." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. at 639. Moreover, as stated to Defendant several times, Plaintiff sought to depose HHS to obtain its official position and testimony on such noticed topics. This widely accepted legal mechanism either willfully or ignorantly fell on deaf ears. As noted above, several of the witnesses deposed repeatedly responded "I don't know" or "I don't remember" to several of the noticed topics; this is, of course, acceptable for an individual fact witness, who is under no "onerous" obligation to prepare in the same way a 30(b)(6) witness is.

Finally, Defendant inadequately cites to *Bertrang v. Wisconsin Central, Ltd.*, 301 F.R.D. 364, 366-368 (D. Minn. 2014) to supposedly support the proposition that a Rule 30(b)(6) designee is limited to testify regarding relevant corporate policies/procedures, corporate/organizational structure, corporate/organizational history (such as past claims/lawsuits), and organizational decision making (such as entering into a contract or demoting an employee). But *Bertrang v. Wisconsin Central, Ltd.*, 301 F.R.D. 364, 366-368 (D. Minn. 2014) does not limit the content of topics that may be discussed at a 30(b)(6) hearing. This Case rather addresses a topic in dispute, which was ultimately compelled.

*West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 2017 WL 9325026, *2-*3 (D. Minn. Oct. 12, 2017) is also unhelpful and unpersuasive in demonstrating the limitations of a 30(b)(6) deposition. The analysis of this case is not whether the topics were appropriate, but whether the representatives were adequately prepared to testify to such topics.

The authority regarding the purpose of the 30(b)(6) deposition, and the distinct roles that an individual fact witness verses a 30(b)(6) designee play is clear. Because of this important and distinct role, and the requisite preparation that such 30(b)(6) designees must undergo under the Federal Rules of Civil Procedure in order to be adequately prepared and qualified to testify on behalf of an organization, Defendant's motion for protective order should be denied on this ground.

## II. THE NOTICED TOPICS ARE RELEVANT, DISCOVERABLE, AND SUFFICIENTLY ARTICULATED; DEFENDANT IMPROPERLY REFUSES TO PRODUCE DESIGNEES ON THIS BASIS AND IMPROPERLY WITHDREW SUCH PREVIOUSLY-DESGINATED AND AGREED-UPON WITNESSES

Defendant contradicts its previous designations of witnesses and argues that Topics 1-6, 8-12, 14-15, 23, 25, 27, and 29-31 within Plaintiff's Rule 30(b)(6) notice are overly broad because they seek "[a]ny and all facts, circumstances, and documents," "[a]ny and all facts, circumstances, documents, and discussions," "[a]ny and all facts, circumstances, discussions, documents, and meeting notes," or "[a]ny and all facts, circumstances, and findings" related to various factual matters.

For several months, the Parties diligently worked towards the agreement of topics for Plaintiff's 30(b)(6) deposition of HHS; Defendant in fact agreed to designate witnesses

for the majority of the topics it now refuses to provide witnesses for, specifically, 3, 4, 7, 9-12, 14, 16-27, and 29-31. Defendant appears to now withdraw its previously-agreed upon witnesses for three primary reasons: first, because Plaintiff has already obtained testimony from the previous depositions of certain fact witnesses. Plaintiff has already explained why this pre-existing testimony is insufficient and distinct from testimony of a 30(b)(6) representative. Defendant next claims that such topics are overly broad. Yet, throughout email correspondence and Zoom meet and confers, Defendant's primary concerns centered around the following: information sought by Plaintiff regarded facts – not "corporate" issues, that Plaintiff's topics requesting the bases for HHS's affirmative defenses were improper, and that Topic 36 was improper because it sought "discovery on discovery." (St. Amant Decl. C, Ex. D.)

Not only did Defendant agree to produce witnesses on the topics above, never materially meeting and conferring regarding their over broadness, these topics primarily seek facts, circumstances, and documents underlying specific instances or documents. For example, Topic 4 specifies that it seeks facts relating to HHS's diversity, equity, and inclusion policies, initiatives, and training since May of 2020, including the objectives and goals behind such policies, the sources of such policies, who is required to undergo such training, and the frequency of the training. This Request is specific and detailed. Defendant's sudden issue with the phrasing "any and all" instead appears to be a mere tactic to avoid providing testimony on a topic it originally agreed to produce a witness to testify on. This specific topic is a far cry from Request No. 11 at issue in Defendant's proffered case, *Fairview Health Services v. Quest Software Inc.*, Case No. 20-cv-1326

(SRN/LIB), 2021 WL 5087564 at \*3 (D. Minn. Sept. 24, 2021, which sought "all Communications between You and any third party regarding or related to allegations of predatory audit practices by You from 2016 to the present."

The only topics that Defendant claimed to be overly broad and maintain its objections to, via email correspondence, were topics **1, 2, 6, and 8**. (*Id.*)

However, Topic 6 is a far cry from the overly broad nature of seeking "all communications" relating to "predatory audit practices." Rather, Topic 6 seeks "any and all facts, circumstances, and documents concerning the June 5, 2020 letter sent on behalf of the OBGYN Department after the murder of George Floyd." This Topic requests information relating to a discrete incident and is thus by no means overly broad. However, as stated above, Plaintiff's proposed designations include testimony related to Topic 6, which would require a much narrower line of questioning regarding such Topic. Defendant could have reviewed such designations and agreed to a narrowing of the Topic, but instead chose to initiate a blanket withdrawal of all 30(b)(6) designees.

That leaves Plaintiff's noticed Topic 8 as the only remaining topic to which Defendant originally took issue with being overly broad: however, Topic 8 is instead necessary for the litigation of Plaintiff's claims. By its very nature, i.e., requesting the facts, circumstances, and documents surrounding meetings that HHS leadership held with physicians of the OBGYN Department *outside the presence* of Dr. Gustilo, this is information that Plaintiff does not have access to. This could all of course be moot, or at least significantly narrowed, had Defendant reviewed Plaintiff's proposed designations, several of which designated testimony as responsive to Topic 8.

Plaintiff's final reason for suddenly retracting its agreement to produce witnesses for the agreed-upon noticed topics is that "Plaintiff failed to conduct fact discovery in a thorough and diligent manner." Yet from the time Defendant first served its objections, Plaintiff repeatedly reiterated to Defendant that it must seek a protective order to avoid producing and preparing a designated representative to testify on the noticed topics. In Defendant's memorandum, it gripes about Plaintiff's first 30(b)(6) Notice being served unilaterally. [Dkt. 37 at 5.) But for months, HHS failed to seek a protective order despite such continued objections to the seven remaining topics. While it is true as a practical matter that a disputed discovery issue may come to the Court in a variety of ways and may be initiated by either party, the plain language of Rule 37 makes it clear that a party's failure to produce a prepared 30(b)(6) witness "is not excused on the ground that the discovery sought was objectionable, unless [it] has a pending motion for a protective order under Rule 26(c)." *Cooley v. Target Corporation*, Case No. 20-cv-2152 (DWF/DTS), 2021 WL 6882660 at *6 (D. Minn. Sept. 17, 2021) citing Fed. R. Civ. P. 37(d)(2). Plaintiff continued to engage in meet and confers and was and is willing to compromise, but all the while reminding Defendant that it intended to move forward with such noticed topics unless Defendant sought a discovery order. But in the final days of discovery, despite representing to the Court that it agreed to extend discovery in hopes of resolving the very few remaining 30(b)(6) topics at issue, Defendant threw away the months of compromise on the basis that Plaintiff lacked "diligence." Such objection is not proper in light of the circumstances, nor were Defendant's sudden refusal to produce its previously-designated witnesses.

### III. THE NOTICED TOPICS ARE ALLOWABLE UNDER FED. R. CIV. P. 26

#### A. Plaintiff's Contention Topics 19-23(d) are Proper and Discoverable under Fed. R. Civ. P. 26

As already argued, Defendant initially agreed to produce designees for topics 3, 4, 7, 9-12, 14, 16-27, and 29-31. Despite several months of meeting and conferring, and agreeing to such topics, Defendant now asserts that 19-23(d) are inappropriate and seek improper legal conclusions. Plaintiff will not restate her previous argument that Defendant improperly withdrew the previously agreed upon designated representatives. Topics 19-23(d) request the following:

**Topic 19**: Whether HHS contends that Dr. Gustilo's speech interfered with the operations of the OBGYN Department at HHS.

**Topic 20**: HHS's contention that Dr. Gustilo's demotion did not occur under circumstances giving rise to an inference of discrimination.

**Topic 21**: HHS's contention, as communicated by one of its HR Representatives, that Dr. Gustilo's personal beliefs served as the "trigger" for her demotion.

**Topic 22**: HHS's contention that it did not retaliate against Dr. Gustilo for her beliefs and for opposing the discriminatory actions of HHS.

**Topic 23**: Any and all facts, circumstances, and documents surrounding Dr. Gustilo's Facebook posts, including:

    a.   how HHS became aware of such Facebook posts;

    b.  any and all internal discussions regarding such Facebook posts;

     c.  the reasons for discussing Dr. Gustilo's personal Facebook posts in the

        context of Dr. Gustilo's professional capacity; and

     d.  HHS's position on whether such Facebook posts interfered with Dr.

        Gustilo's role and performance as Chair of the OBYGYN Department.

(St. Amant Decl. A.)

In *Arctic Cat, Inc. v. Bombardier Recreational Products, Inc.*, the defendant noticed 30(b)(6) topics that sought only information concerning the factual bases for the plaintiff's claims, not privileged attorney-client communications or documents prepared in anticipation of litigation. 12–cv–2692 (JRT/LIB), 2014 WL 12610146 at *6 (D. Minn. May 23, 2014). In allowing the defendant to ask the disputed topics, the court stated:

> Arctic Cat will have the opportunity to object to questions, if any, meant to elicit privileged attorney-client communications or information protected by the work product doctrine. However, to the extent that BRP seeks factual information known to the 30(b)(6) representative at the time of filing the present suit, the witness shall answer. "Since Rule 30(b)(6) imposes an affirmative duty on a party to designate a witness with knowledge of the areas of examination identified by the opposing party, that witness can be counseled on the scope of the attorney-client privilege and attorney work product doctrine in deposition preparation.

*Arctic Cat*, 12–cv–2692 (JRT/LIB), 2014 WL 12610146 at *6 (citing *U.S. E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 434 (D. Nev. 2006)).

Plaintiff's noticed topics relate to the facts underlying Plaintiff's claims. And as the Court instructed in *Arctic Court*, Defendant has the opportunity to object to questions, if any, that are meant to elicit privileged attorney-client communications or information protected by the work product doctrine. Accordingly, such contention topics are

appropriate and should be allowed within to be asked during Plaintiff's 30(b)(6) deposition of HHS. Defendant's motion for protective order should be accordingly denied.

### B. Plaintiff's Topic 32 Requesting the Factual Basis for One of Defendant's Affirmative Defenses Is Proper and Discoverable Under Fed. R. Civ. P. 26

Moreover, as stated above, and in the spirit of compromise, Plaintiff agreed to withdraw all but one topic that questioned HHS regarding its affirmative defenses. The only remaining question regarding HHS's affirmative defenses that remains is Topic 32: The factual basis for HHS's affirmative defense that Dr. Gustilo failed to mitigate her damages following her demotion. Several courts have found that a 30(b)(6) designee must testify to the factual bases for defendant's asserted affirmative defenses. *See, e.g. EEOC v. Caesars Entm't, Inc.,* 237 F.R.D. 428, 435 (D.Nev.2006) (denying the defendant's request for a protective order to limit the scope of Rule 30(b)(6) deposition questioning to preclude inquiry into the factual bases for defendant's asserted position statements and affirmative defenses) and *AMP, Inc. v. Fujitsu Microelectronics, Inc.,* 853 F. Supp. 808, 831 (M.D.Pa.1994) (compelling a corporate defendant to produce a Rule 30(b)(6) witness to answer questions regarding the contentions and affirmative defenses detailed in the defendants' answer and counterclaim). This topic is relevant and discoverable as it seeks information regarding whether HHS contends that Plaintiff was expected to seek other leadership positions at HHS or elsewhere following her demotion. This topic will further allow Plaintiff to determine the extent of HHS's assertion that Plaintiff failed to mitigate her damages. Defendant's motion for protective order should be accordingly denied.

### C. Plaintiff's Noticed Topic 36 is Proper under Minn. R. Civ. P. 26

Finally, Topic 36 seeks the following:

The process used by HHS and its agents to search for and collect documents responsive to any of Dr. Gustilo's First Set of Discovery Requests, including:

      a.   the custodians of such documents;

      b.   the types of information systems searched (such as computers, file servers, e-mail, text message, social media, etc.);

      c.   the information systems searched (such as an internal database, Microsoft Exchange Server, etc.);

      d.   the specific devices searched; and

      e.   the keywords used for such searches.

(St. Amant Decl. A.) A party resisting discovery of its collection process has the burden to establish disproportionality. *Target Corporation v. ACE American Insurance Company*, 576 F. Supp. 3d 609, 622 (D. Minn. 2021). Otherwise, a blanket objection on the basis of attorney-client privilege is inappropriate; rather, a 30(b)(6) designee may simply be instructed not to answer if any questions regarding collection efforts would elicit privileged information. *See id*. This is a relevant topic for several reasons: first, during the deposition of Dr. Gustilo, an HHS policy was shown to Plaintiff that had not been produced in this Action by Defendant. (St. Amant Decl. ¶ 33, Ex. R.) This leads to questions as to when such document was discovered and whether it was considered to be produced. Moreover, Defendant's counsel repeatedly represented to Plaintiff's counsel that they were unsure what exactly Plaintiff meant when she referred to and requested documents relating to HHS's culturally congruent care model. (St. Amant Decl. Ex. D.) Defendant was

recently able to ask Plaintiff about this culturally congruent care model during her deposition, but this claim of ignorance leads to further questions as to whether Defendant adequately searched for such documents leading up to its productions.

Topic 36 is relevant under Fed. R. Civ. P. as it seeks information relating to the collection of documents directly related to Plaintiff's claims. Defendant's motion for protective order should be accordingly denied.

## CONCLUSION

Before Defendant improperly withdrew its previously agreed-upon designated witnesses, there were very few topics actually in dispute. Those have been addressed here. But Defendant cannot suddenly seek a protective order on witnesses it originally agreed to produce through almost six months of meeting and conferring and compromising. Contrary to Defendant's assertions, Plaintiff repeatedly told Defendant that it would need to seek a protective order for the seven remaining topics if it continued to refuse to produce witnesses to testify regarding such topics. Defendant did not do so for several months. Defendant further continued to repeatedly move the 30(b)(6) goal post, requesting more time to meet and confer, more time to compromise, and more time to prepare its witnesses. Defendant even asked Plaintiff to do its own 30(b)(6) designations for her opposing party. Defendant's actions turned out to be nothing more than an endless run around to avoid Plaintiff's right to depose HHS on what are clearly discoverable and relevant topics. Accordingly, Plaintiff respectfully requests this Court deny Defendant's Motion for Protective Order.

ECKLAND & BLANDO LLP

Dated: April 10, 2023

/s/ DANIEL J. CRAGG
Daniel J. Cragg, Esq. (#389888)
Anne N. St. Amant, Esq. (#401923)
800 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
dcragg@ecklandblando.com
astamant@ecklandblando.com
(612) 236-0160

*Counsel for Plaintiff*